## SCHURMAN v. MARLEY.

PLEADING.—WIFE'S PROPERTY.—In a complaint by a married woman, for the unlawful conversion of her personal property, it is enough to allege that it is her separate property, without showing the source from which it was derived.

COMMON LAW.—In the absence of any evidence of a statute upon the subject, it will be presumed that the common law prevails in *North Carolina* as to the rights of married women.

Schurman *v.* Marley.

MARRIED WOMEN.—SEPARATE PROPERTY.—Where money received by a married woman from her father's estate in *North Carolina* was treated by the husband as the money of the wife, and invested in personal property for her use, and such property was afterwards brought by the husband and wife to this State, it was held that it became and remained the separate property of the wife, and must be protected as such under our statute.

APPEAL from the *Marion* Common Pleas.

ELLIOTT, J.—This was a suit by *Susannah M. Marley,* a *feme covert,* against *Schurman,* to recover the value of certain personal property, which she claimed to be her separate property, and which, she alleged, the defendant had unlawfully converted to his own use. The action was instituted to recover the value of a wagon and double harness, a sorrel mare, a bay horse, and a carriage and single harness, but the defendant returned the carriage and single harness, when they ceased to be the subject of the litigation. The defendant first demurred to the complaint, but the court overruled the demurrer, and he then filed an answer in two paragraphs. 1. The general denial. 2. Justifying the possession of the property, and claiming a right thereto, under a mortgage thereof by *David Marley,* the plaintiff's husband, with the knowledge and consent, as it is alleged, of the plaintiff. A reply in denial of the second paragraph was filed. The issues were tried by the court, and there was a finding and judgment for the plaintiff for $193 50. A motion for a new trial having been overruled, *Schurman* appeals.

The first question presented arises upon the action of the court in overruling the demurrer to the complaint. It is alleged in the complaint that the plaintiff "is the owner (devised by will from her father) of the following personal property, to-wit:

| | |
|---|---|
| Two horses, one a sorrel mare, the other" (a bay horse), | $250 00 |
| One two-horse wagon | 100 00 |
| One carriage and harness | 75 00 |
| Lot of wagon harness | 15 00 |
| Total | $440 00 |

"That she received the sum of four hundred and fifty dollars in money from her father's estate, and one sorrel mare worth one hundred and fifty dollars, and that she invested said money, so derived as aforesaid, in the foregoing described personal property, and for the sake of making a living for herself and family, she let her husband have the use of said property; that on the —— day of *November*, 1866, the defendant took possession of said property, and unlawfully converted the same to his own use, without asking the plaintiff," and without paying her for the same, to her damage one thousand dollars, for which she demands judgment.

One objection urged to the complaint is, that in the attempt to set out the source of the plaintiff's title to the property, it first alleges that she received it by devise from her father, and then alleges that, except a sorrel mare, it was purchased by her with money received from her father's estate, and that it is therefore contradictory and uncertain. The complaint is certainly not a model in form to be commended, and does not seem to have been drawn by one acquainted with the simplest rules of pleading, but taking the last averment as an explanation of the first, as to how the plaintiff derived the property from her father, which seems to have been the intention of the draughtsman, we understand it to allege that the property, except the sorrel mare, was purchased by the plaintiff with money received by her from her father's estate. It would have been sufficient to allege in the complaint that the property belonged to the plaintiff in her own right, and that the defendant, being in possession thereof, had unlawfully converted the same to his own use. And such, we think, are in substance the averments of the complaint, when shorn of its surplusage. The gravamen of the complaint is the unlawful conversion of the plaintiff's property. It is proper to say that the complaint was not drawn by the attorneys of record in this court.

The overruling of the appellant's motion for a new trial is also assigned for error. One of the reasons filed for a new trial is that the finding of the court is contrary to the evidence,

and upon this arises the only remaining question in the case. It is shown by the evidence that the plaintiff and her husband, *David Marley*, lived in *Chatham* county, in the State of *North Carolina*, where they were married, prior to the year 1851. After their marriage, the father of *Mrs. Marley* gave her a sorrel mare, from which the sorrel mare in controversy was raised. In 1851, the father of *Mrs. Marley* died in *North Carolina*, and on the settlement of his estate in 1853 or 1854, *Mrs. Marley* received as her distributive share thereof some five or six hundred dollars, with which was purchased a horse and the other property in controversy, except the sorrel mare. In 1854, *Marley* and his wife removed from *North Carolina* to this State, bringing with them the property so purchased, which they continued to hold until it passed into the possession of the appellant, except the horse brought by them to this State, which was killed on the railroad; but the railroad company paid *Marley* for him, and, with the money so received, he purchased the bay horse in dispute.

In *January*, 1866, *David Marley*, the husband, executed to the appellant a chattel mortgage on the property to secure the payment of a note for $175. In *November* of the same year, the money so secured being due and unpaid, the appellant replevied the property and thereby obtained possession of it, and subsequently sold the horse and sorrel mare, the action of replevin still remaining untried.

It is insisted by the appellant that the property, though purchased with the money of the wife, received on distribution of the estate of her deceased father, when it came into the possession of the husband, in the State of *North Carolina*, became his absolute property, and hence the wife cannot recover in this suit. If the right of the wife to personal property which may descend to her after marriage is secured to her by statute in *North Carolina*, it is not shown in this case, and, in the absence of such showing, we must presume, under repeated decisions of this court, that the common law prevails in that State. We are aware that

this rule has been controverted in some of the states, but having been adhered to by this court through a long series of decisions, it must be regarded as the settled rule in this State.

At common law, as a general rule, the personal property, money and choses in action held by the wife at the time of the marriage, or acquired during the coverture, upon being reduced to possession by the husband, became his absolute property. We refer here to the general property of the wife, and not to that held by her as her separate estate. "The rule is the same if a legacy or distributive share accrues to the wife during coverture." 2 Kent. Com. 135.

But equity has a more tender regard for the rights and interests of the wife and her children, and when the husband is compelled to resort to a court of chancery to recover the wife's property in action, "she must be made a party with him, and then the court will require the husband to make a suitable provision for the wife out of the property." So if the husband takes possession in the character of a trustee for his wife, and not as husband, it is not such a possession as will render the property absolutely his, or bar the right of the wife to it, if she survives him.

The doctrine on this subject was very fully discussed, and numerous cases reviewed by Chancellor KENT, in *Kenny* v. *Udall,* 5 John. Ch. 464, where it is said that "it is now understood to be settled that the wife's equity attaches upon her personal property when it is subject to the jurisdiction of the court, and is the object of the suit, into whosesoever hands it may come, or in whatever manner it may have been transferred. The same rule applies, whether the application be by the husband, or his representatives or assignees, to obtain possession of the property, or whether it be by the wife or her trustee, or by any person partaking of that character, praying for a provision out of that property. It is equally binding whether the assignment be by operation of law, or by the act of the party to general assignees, or by particular transfer to an individual, and

whether that particular transfer has been voluntary, or been made for a good and valuable consideration," &c. "Assuming that the defendant *Udall* was a *bona fide* purchaser of the wife's personal estate for a valuable considereration, or that the same had been fairly assigned to him by the husband, as security for a debt, or in payment of a debt, yet the wife's equity would not be affected."

In the case of *Totten* v. *McManus*, 5 Ind. 407, a judgment creditor of the husband sought to subject, to the payment of the judgment, land purchased by the wife in her own name, with money received after the marriage, but from means held by her prior thereto. STUART, J., in pronouncing the opinion of the court against the creditor, said: "But it is contended that the moment the money came into her hands, it became the property of the husband. So far from this, courts of equity will even hold the husband and his heirs trustees of the wife's separate property, if he takes possession of it in any other way than by gift, express or implied," and refers to *Taggard* v. *Talcot*, 2 Edw. Ch. R. 628, as sustaining the doctrine. In that case, the defendant received from his wife's father, in her right, $3,945, and placed it to her credit on his books, with the understanding that it was to be her separate property, and that all the furniture purchased with it was to be carried to the account of this fund as her sole property. The furniture sought to be levied was bought with her money. Held, that she was entitled to have it protected as her separate property, and that the court would hold the husband as trustee for his wife.

And so it is said in *Resor* v. *Resor*, 9 Ind. 347, that it is an established principle "that although the presumption is that money of the wife reduced to possession by the husband during the marriage becomes his, such presumption is not conclusive; and the husband may so treat it, as to charge himself and his heirs, as the trustees of the wife, with the duty of applying it to her separate use." See Tyler on Infancy and Coverture, § 246, p. 375, *et seq.*

Applying the principles asserted by the foregoing authorities to the case at bar, we hold that if at the time of the receipt of the distributive share of the wife of her father's estate, *Marley*, the husband, treated it as the money of his wife, and not as his own, and purchased the property therewith for her, and not for himself, and if the property, including the sorrel mare, was held and treated as the property of the wife until they removed with it to this State, in 1854, then, under the statute of this State, it became and remained the separate property of the wife, and should be protected as such.   The evidence on this subject is somewhat conflicting, and does not very clearly establish the claim of the wife, but the court having found in her favor, we are not prepared to say that the evidence does not justify the finding.   We think the judgment should be affirmed.

The judgment is affirmed, with one per cent. damages, and costs.

*E. B. Martindale* and *J. Tarkington*, for appellant.

*L. Barbour* and *C. P. Jacobs*, for appellee.